[No. E009342. Fourth Dist., Div. Two. Jan. 28, 1994.]

GERHARD STOLL, Plaintiff and Appellant, v.
JOSEPH SHUFF et al., Defendants and Appellants.

**[Opinion certified for partial publication.†]**

†Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts A through C, D.1, D.2 and E through G.

**COUNSEL**

Gerhard Stoll, in pro. per., Jerome Sapiro, Jr., and David A. Sauers for Plaintiff and Appellant.

Berger & Norton, Michael M. Berger and Jacqueline A. Axtell for Defendants and Appellants.

**OPINION**

**McKINSTER, J.**—The plaintiff and the defendants appeal from a judgment awarding damages against the defendants for breach of contract and for the tortious denial of the existence of a contract, but denying the plaintiff any prejudgment interest. We modify the judgment to add the prejudgment interest and affirm as modified.

### FACTUAL AND PROCEDURAL BACKGROUND

Goldmine Ski Associates, Inc. (Goldmine), operated a ski resort. By an oral contract in 1986, Joseph Shuff, the president of Goldmine and the general manager of the ski resort, agreed to pay Gerhard Stoll a finder's fee if Stoll found a buyer for the ski resort. The agreement was never memorialized in writing, and the amount of the finder's fee was never expressly agreed upon.

Stoll found a buyer, S-K-I Corporation (Buyer), which entered into negotiations with Shuff and ultimately purchased Goldmine on January 1, 1988. After the close of the sale, Stoll made demand upon Shuff for his fee. Shuff denied liability and refused to pay.

In July of 1988, Stoll filed a complaint against Shuff and Goldmine (defendants). It is framed in two counts: the first for breach of contract, and the second for the reasonable value of services rendered. The defendants responded with a general denial.

At the beginning of trial, the trial court permitted Stoll to amend his complaint by adding a third cause of action which alleged that the defendants had denied the existence of the finder's fee agreement in bad faith, and which sought both compensatory and punitive damages in tort.

Ultimately, following a jury trial, judgment was entered in favor of Stoll and against the defendants, awarding contract damages in the sum of $221,000, compensatory damages in tort in the sum of $116,132, and punitive damages in the total sum of $97,460. However, the trial court denied Stoll's subsequent motion for prejudgment interest on the contract damages. The defendants appeal and Stoll cross-appeals.

## CONTENTIONS

In their appeal, the defendants contend that the entire judgment must be reversed, because (1) the verdict form was defective, (2) enforcement of the finder's fee agreement is barred by the statute of frauds, and (3) the jury was not properly instructed. They also contend that the judgment on the third cause of action (for the tortious denial of the existence of the contract) must be reversed because the court erred in permitting the amendment to add that claim and because the verdict is not supported by substantial evidence. Finally, they argue that the punitive damage award under the tort claim is not supported by the necessary findings or evidence.[1]

In his cross-appeal, Stoll contends that the trial court erred in denying his motion for prejudgment interest on the contract damages. He also moves for an award of attorney fees incurred on appeal to defend the judgment on his contractual claim.

## DISCUSSION

A.-C.*

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

[1]In their reply brief, the defendants also attack the compensatory damage award in the tort cause of action, contending that it is not supported by admissible evidence. However, an appellate court has the discretion to deem an alleged error to have been waived if asserted only in the reply brief and not the opening brief. (*Hibernia Sav. and Loan Soc.* v. *Farnham* (1908) 153 Cal. 578, 584 [96 P. 9].) Here, in three sentences at the end of a footnote to the introduction to their opening brief, the defendants mentioned the alleged inadmissibility of the supporting evidence, but never discussed the supposed error in the body of their brief. Responding in an equally superficial footnote, Stoll clearly did not consider the defendants' brief reference to be a serious effort to raise the issue on appeal. Neither do we. Any error has been waived.

*See footnote, *ante*, page 22.

### D. *Bad Faith Denial of Existence of Contract*

In *Seaman's Direct Buying Service, Inc.* v. *Standard Oil Co.* (1984) 36 Cal.3d 752 [206 Cal.Rptr. 354, 686 P.2d 1158] (*Seaman's*), our Supreme Court held for the first time that "a party to a contract may incur tort remedies when, in addition to breaching the contract, it seeks to shield itself from liability by denying, in bad faith and without probable cause, that the contract exists." (P. 769.)

Here, the trial court allowed Stoll to amend his complaint to assert such a claim. In response to that claim, the jury found by a special verdict that there had been a contract between Stoll and the defendants, that the defendants had denied the existence of that contract in bad faith, and that Stoll had been damaged as a result. After further evidence, the jury then returned a general verdict by which it found Shuff and Goldmine liable in tort for both compensatory and punitive damages. A judgment was entered in accordance with those verdicts.

The defendants contend that the judgment with respect to the tort claim must be reversed, apparently for three reasons: (1) the trial court abused its discretion in permitting the amendment to the pleadings on the morning of trial; (2) the amendment failed to allege facts sufficient to state a cause of action; and (3) the judgment on the third cause of action is not supported by substantial evidence.

1., 2.*

. . . . . . . . . . . . . . . . . . . . . . . . . .

### 3. *Was the Third Cause of Action Supported by Substantial Evidence?*

It is undisputed that, prior to the commencement of litigation, the defendants never communicated their denial of the existence of the contract directly to Stoll. However, during negotiations with Buyer regarding the sale of the resort, and thus prior to the filing of the complaint, the defendants told Buyer that the defendants had not agreed with Stoll to pay a finder's fee. Since a finder's fee is payable upon the close of the sale, those statements were made prior to the time the defendants' performance under the finder's fee contract was due.

The defendants contend that this evidence is insufficient to establish the elements of a claim for the bad-faith denial of a contract. In

---

*See footnote, *ante*, page 22.

particular, they argue that the denial of the existence of the contract must be expressed after the contract has been breached, and that the breaching party must expressly deny the existence of the contract directly to the nonbreaching party prior to the commencement of litigation.

We disagree. As noted earlier, *Seaman's* holds that a party which is liable in contract for breaching a contractual obligation also incurs tort liability if ". . . it seeks to shield itself from liability by denying, in bad faith and without probable cause, that the contract exists." (36 Cal.3d at p. 769.) In defining that new tort, *Seaman's* does not limit tort liability to those denials of the existence of the contract which are uttered at a particular time or to a particular person. Thus, it does not support the defendants' contentions.

Nor are we persuaded by the authorities cited by the defendants. For instance, in *Careau & Co.* v. *Security Pacific Business Credit, Inc.* (1990) 222 Cal.App.3d 1371 [272 Cal.Rptr. 387], the court lists the elements of the tort as being "(1) an underlying contract, (2) which is breached by the defendant, (3) who then denies liability by asserting that the contract does not exist, (4) in bad faith and (5) without probable cause for such denial." (P. 1401, fn. omitted.) The defendants rely exclusively upon the word "then" in the third phrase for the proposition that no liability results from the bad faith denial of liability unless the defendant has already breached the contract at the time that the existence of the contract is denied.

That reliance is misplaced. *Careau & Co.* cites no authority for the proposition that the breach of the contract must have preceded the denial of the existence of the contract, and does not consider the issue itself. "Opinions are not authority for issues they do not consider." (*Palmer* v. *Ted Stevens Honda, Inc.* (1987) 193 Cal.App.3d 530, 539 [238 Cal.Rptr. 363].)

Not only is there no compelling or persuasive authority to support the proposition, the defendants offer no reasoned argument in favor of the adoption of such a rule. If an obligor breaches a contract and thereafter defends against a claim for damages by denying in bad faith and without probable cause the existence of the contract, he has committed a tort. If another obligor denies the existence of the contract *before* his performance is due, and then consistent with that denial allows the time for his performance to expire, there is no reason why the law should treat him any differently from the first obligor. He has the same culpable mental state, has caused the same damages, and should suffer the same consequences.

In support of their contention that "[a]n action for bad faith denial of the existence of a contract must be pled before defendant has answered and

denied that a contract exists," the defendants cite *Lynch & Freytag* v. *Cooper* (1990) 218 Cal.App.3d 603 [267 Cal.Rptr. 189]. However, that case holds only that such an action cannot succeed if the sole evidence that the defendants disputed the existence of the contract consists of a denial in their answer to the complaint. (P. 610; see also *DuBarry Internat., Inc.* v. *Southwest Forest Industries, Inc.* (1991) 231 Cal.App.3d 552, 575-576 [282 Cal.Rptr. 181] [same]; *Oki America, Inc.* v. *Microtech Intern., Inc.* (9th Cir. 1989) 872 F.2d 312, 314 [same].)

These cases have no application here, because there is no suggestion that the defendants' general denial was ever introduced into evidence. Moreover, because they deal solely with the issue of what evidence a plaintiff may use to prove that a defendant has denied the existence of the contract, they do not support the defendants' contention that any denial must have occurred before the defendants' answer was filed.

The defendants also rely upon *Palmer* v. *Ted Stevens Honda, Inc., supra*, 193 Cal.App.3d 530. There, prior to the commencement of litigation, the defendant denied that it was a party to the contract at issue. (P. 533.) The plaintiff sued for, inter alia, breach of contract and bad faith denial of contract. (*Ibid.*) At trial, the plaintiff was permitted to testify "that in two and one-half years of litigation preceding the trial in July 1985, he had fought sixteen law and motion matters, tying one and winning the other fifteen, three with sanctions, at a cost of some $56,000 in attorney fees" and that in his opinion, the defendant was " 'stone-walling' " him. (P. 535.) The jury was instructed that this evidence was to be considered only as to whether the defendant had acted in bad faith and with a lack of probable cause, malice or oppression. (P. 537.) On appeal, the court held that the trial court had erred in allowing this evidence (p. 540), because "once litigation has commenced, the actions taken in its defense are not . . . probative of whether [a] defendant in bad faith denied the contractual obligation prior to the lawsuit." (P. 539.)

The defendants cite *Palmer* for the proposition that the denial giving rise to the cause of action under *Seaman's* must have occurred before the litigation commenced. However, a careful reading of the opinion reveals that the holding of *Palmer* is far narrower: that the tactical decisions made during the course of litigation by a defendant's lawyer cannot be used as evidence of the defendant's bad faith at the time that the defendant denied the existence of a contract. (193 Cal.App.3d at pp. 539-540.) As with *Lynch & Freytag*, this case deals, not with the issue of when the bad faith denial must have been made relative to the commencement of the action to enforce the contract, but rather with the issue of what evidence may be used by a

plaintiff in proving a bad faith denial. As such, it has no application here, since the defendants have not suggested that any evidence of their litigation tactics were introduced at trial.

Finally, in addition to their contentions regarding the timing of the denial of the existence of the contract, the defendants contend that the manner in which the denial is made must meet specific requirements. In particular, they contend that the denial of the existence of the contract must be expressly made by the defendant to the plaintiff. The only authority they cite for this proposition is the following two sentences from *Seaman's*: "It has been held that a party to a contract may be subject to tort liability, including punitive damages, if he coerces the other party to pay more than is due under the contract terms through the threat of a lawsuit, made ' "without probable cause and with no belief in the existence of the cause of action." ' (*Adams* v. *Crater Well Drilling, Inc.* (1976) 276 Ore. 789 [556 P.2d 679, 681].) There is little difference, in principle, between a contracting party obtaining excess payment in such manner, and a contracting party seeking to avoid all liability on a meritorious contract claim by adopting a 'stonewall' position ('see you in court') without probable cause and with no belief in the existence of a defense." (*Seaman's*, 36 Cal.3d at pp. 769-770.) The defendants apparently reason that just as the threat of the unjustified lawsuit must be communicated to the debtor if the threat is to have any coercive effect, so also must the denial be communicated to the party seeking to enforce the contract if it is to constitute tortious conduct.

By continually focusing on the timing and manner of the denial of the existence of the contract, the defendants demonstrate that they miscomprehend the nature of the tortious conduct proscribed by *Seaman's*. That case says that it is not a tort to dispute liability under a contract if the dispute is in good faith, but that it is a tort to dispute that liability if that dispute is based upon a bad faith denial of the existence of the contract. (36 Cal.3d at pp. 769-770.) ▮ Accordingly, the tort is committed as soon as a party denies liability under the contract, if that denial is based upon a bad faith refusal to acknowledge the very existence of the contract sought to be enforced.

The basis for the denial of liability need not be expressly stated for the tort to be complete. An express denial of the existence of the contract is significant, not because it is an element of the tort, but because it is a means of proving that when the party denied liability under the contract, he did so for a tortious reason, i.e., because he denied in bad faith that the contract exists. As noted above, the fact that a defendant denies the existence of the contract cannot be proven at trial by the contents of that defendant's answer.

(*Lynch & Freytag* v. *Cooper, supra,* 218 Cal.App.3d at p. 610; *DuBarry Internat., Inc.* v. *Southwest Forest Industries, Inc., supra,* 231 Cal.App.3d at p. 576; *Oki America, Inc.* v. *Microtech Intern., Inc., supra,* 872 F.2d at p. 314.) Thus, the usual means by which the reason for the denial of liability will be proven will be some statement by the defendant explaining that the defendant is denying liability because he is denying the existence of the contract. That explanation may be communicated directly to the other contracting party, as in *Seaman's,* or it may be communicated only to a third party, as was the case here.[9]

While we are aware of no case which specifically addresses the issue of whether a denial of the existence of the contract is sufficient if expressed only to a third party, *Quigley* v. *Pet, Inc.* (1984) 162 Cal.App.3d 877 [208 Cal.Rptr. 394] supports our conclusion that it is. There, a jury had awarded punitive damages to Quigley on the theory that Pet had breached the implied covenant of good faith and fair dealing. On appeal, the court held that there was no special relationship between the parties, and therefore punitive damages could be affirmed only if a *Seaman's* tort had been proven. On that issue, the court said: "We cannot say that there was no evidence of an outright and unfounded denial of the existence of the contractual relationship. If properly instructed, a jury could conclude . . . that Pet's informing the bank there was never a contract was in bad faith. Pet would then be potentially liable for general and punitive damages." (*Id.,* p. 894, fn. omitted.) While the judgment on that count was reversed because the jury had not been properly instructed (*id.,* p. 895), the court's reliance upon the denial expressed to the bank, a nonparty, shows that it did not feel that the denial must be made directly to the plaintiff.

The rule advocated by the defendants—that the denial of the existence of the contract must be expressly stated before the commencement of the litigation and directly by the defendant to the plaintiff—would lead to absurd results. Under such a rule, a breaching party who denies any liability in bad faith on the pretense that no contract ever existed would be liable in tort if he expresses that reason directly to the plaintiff on the day *before* the plaintiff files his action, but would escape tort liability if he told the plaintiff the reason for his denial of liability on the day *after* the filing. The breaching party would also escape tort liability if he denied liability without ever explaining to the plaintiff his reason for doing so, even though he had told

---

[9]Indeed, the same purpose would be served by evidence of a statement that was never communicated to anyone, such as an explanation recorded solely in the defendant's personal diary or in an internal memorandum which was never shown to anyone until it was disclosed in pretrial discovery.

everyone else in town that the reason was that no contract ever existed. In each case, the denial of liability is based upon a bad faith denial of the existence of the contract. Since the same culpable mental state is present in each case, there is no rational reason why tort liability should attach in some circumstances but not others.[10]

In summary, we would modify the test described in *Careau & Co.* v. *Security Pacific Business Credit, Inc., supra,* 222 Cal.App.3d at page 1403, so that the elements of the tort are: (1) an underlying contract, (2) which is breached by the defendant, (3) who denies liability on the basis that the contract does not exist, (4) in bad faith, and (5) without probable cause for denying its existence. While the denial of liability must be based upon the defendant's contention that the contract does not exist, that contention need not be expressly stated before the commencement of litigation and need not be communicated by the defendant to the plaintiff.

Here, there is substantial evidence, either direct or circumstantial, from which a reasonable jury could find the existence of each of those elements. The defendants do not appear to contend to the contrary. Their only argument in regard to the sufficiency of the evidence is that there is no evidence that an express denial of the existence of the contract was communicated directly to Stoll after the breach and before the filing of the complaint. Since the law does not require that the denial of the existence of the contract be expressly stated at any particular time or to any particular audience, the evidence is sufficient to support the jury's findings on this issue.

E.-G.*

. . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The judgment is modified, nunc pro tunc, by deleting the phrase "with prejudgment interest thereon in the sum of $ to be determined" from page 3, line 18, and replacing it with the phrase, "with prejudgment interest thereon in the sum of $67,632.10." As modified, the judgment is affirmed. Stoll shall recover his costs on appeal.

---

[10]The defendants certainly cannot justify their proposed rule on the ground that Stoll's knowledge of the reason for their denial of liability is an essential element of the tort, and that his ignorance of the reason precludes tort liability. The defendants have previously argued that Stoll surely knew before suit was filed that they denied the existence of the contract.

*See footnote, *ante*, page 22.

Stoll's motion for attorney fees is granted, and the matter is remanded to the trial court for a determination of the amount of attorney fees incurred by Stoll on appeal in defending the existence and enforceability of the finder fee agreement. On remand, the defendants may contest the amount of attorney fees reasonably incurred for that purpose, but may not contest Stoll's entitlement to recover those fees in general.

Ramirez, P. J., and Timlin, J., concurred.

A petition for a rehearing was denied February 23, 1994, and the petition of defendants and appellants for review by the Supreme Court was denied April 13, 1994. Baxter, J., and George, J., were of the opinion that the petition should be granted.