Filed 11/2/15  In re J.S. CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re J.S., a Person Coming Under the Juvenile Court Law. | B260961 |
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>J.S.,<br><br>Defendant and Appellant. | (Los Angeles County Super. Ct. No. TJ21823) |

APPEAL from a judgment of the Superior Court of Los Angeles County. Catherine J. Pratt, Juvenile Referee.  Affirmed.

Holly Jackson, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General and Lance E. Winters, Assistant Attorney General, Kenneth C. Byrne and Shira Seigle Markovich, Deputy Attorneys General, for Plaintiff and Respondent.

———————————————

Minor J.S. appeals from the order declaring him a ward of the juvenile court after the court found that the minor had been in the possession of both ammunition and a loaded and unregistered firearm.  Minor contends the trial court erred by denying his motion to suppress evidence of the weapon and the ammunition on the ground that the detention and search that led to the discovery of those items were not justified.  We disagree and therefore affirm the order.

## FACTS AND PROCEDURAL HISTORY[1]

Shortly before 11:00 p.m. on November 14, 2014, Los Angeles County Sheriff's Deputies Jason Pearson and James Krase arrived at 711 North Rose Street in Compton to investigate an anonymous phone tip that several adult male Hispanic gang members were loitering and drinking at that location.  According to Pearson, this was a high crime area and was home to the Compton Varrio 124 street gang.  The neighborhood was known for gun and drug possession, shootings, graffiti, vandalism, and stolen cars.

Mirror image apartment complexes are located at 711 and 713 North Rose Street. Each complex is separated by a block wall, and on either side of the block wall are 50-foot long driveways that lead to carports.  The deputies walked down the 711 driveway, where they saw no people but did find two partly empty cans of Bud Light that were cold to the touch.  The deputies decided to check out the 713 property and began walking down that driveway.  According to Deputy Pearson, the layout of the driveway and block wall formed a long corridor that left the deputies in a poor tactical position should they encounter a large group of people.

After walking down the 713 driveway the deputies saw more Bud Light cans on the ground in the vicinity of nine people, all but one of whom appeared to be minors. One of the nine was sprawled across the hood of a Honda and appeared to be either

---

**1**     The trial court conducted the suppression hearing and adjudication hearing simultaneously.  As a result, the evidence that supported denial of the minor's suppression motion also served as the evidentiary basis for the juvenile court's finding that the minor was a ward of the court.

sleeping or drunk. Pearson recognized him from a previous contact as 16-year-old J.S., and knew that the minor sported tattoos from the Compton Varrio 124 gang. Pearson was unsure whether the minor was asleep or drunk and nudged the minor in order to check on his welfare. The minor opened his eyes, said "oh, fuck," jumped off the car, and began walking toward the rear of the property.

Pearson told the minor to stop, but he kept walking toward a 20-foot-high fence at the back of the property. There were some more cars in that area, as well as a dumpster that blocked Pearson's view. Pearson believed the minor was trying to "disassociate himself" from the Honda. The deputy was also concerned for his safety because "we were severely outnumbered. We were in a gang area, known gang hangout. We didn't see all of the area, and we didn't have everybody detained yet." Because it was clear that the minor would not try to escape by going over the 20-foot fence, Pearson was also worried about "what he was going for . . . ."

Pearson walked the minor back toward the Honda while his partner, Krase, ordered the other eight people to put their hands on the car. Pearson believed Krase had done so in order to hold them all in one place until back-up arrived. They were ordered to put their hands on the Honda for officer safety because the deputies were outnumbered, were in a gang area, and did not yet know whether any of them were armed. Before Pearson could return to the Honda, however, the minor pulled free from the deputy's grasp and began to walk around the car. Pearson told Krase to cut off the minor's escape route and both deputies took hold of the minor's hands.

The deputies handcuffed the minor. According to Pearson, his partner then searched the minor "based on where we were, what we were doing, his actions, [and] disassociating and then getting out of my grasp . . . ." According to Krase, the minor was wearing a baggy and bulky sweater and large shorts. When Krase searched the minor he found a loaded and functional semiautomatic .22 caliber handgun.

The minor argued that these facts showed an absence of justification to both detain and search him. The trial court disagreed, "based upon officer's safety given the totality of the circumstances, the location, the possible gang considerations, . . . how he was

3

dressed, given the fact that if he had a weapon, it would not have been obvious given the way he was dressed." The trial court then sustained the allegations of the petition filed by the district attorney's office alleging that the minor be declared a ward of the court (Welf. & Inst. Code, § 602) for having committed the following offenses: (1) carrying a loaded and unregistered handgun (Pen. Code, § 25850, subd. (a)); (2) being a minor in possession of a concealable firearm (Pen. Code, § 29610); and (3) being a minor in possession of live ammunition (Pen. Code, § 29650).

## STANDARD OF REVIEW

The standard of review from a trial court's ruling on a motion to suppress evidence is the same in both juvenile and criminal proceedings. We defer to the trial court's express or implied factual findings where supported by substantial evidence. We then exercise our independent judgment to determine whether those facts support the trial court's legal conclusions. (*In re Lennies H.* (2005) 126 Cal.App.4th 1232, 1236.)

## DISCUSSION

1.     *The Minor's Detention Was Justified*

An officer may temporarily detain a suspect based on only a reasonable suspicion that the suspect has committed or is about to commit a crime. (*People v. Durazo* (2004) 124 Cal.App.4th 728, 734.) Reasonable suspicion is a lower standard than probable cause and can arise from an anonymous tip. (*People v. Wells* (2006) 38 Cal.4th 1078, 1083.) The officer's suspicion must be based on specific, articulable facts that are reasonably consistent with criminal activity. His subjective suspicion must be objectively reasonable and may not be based on mere curiosity, rumor, or hunch. (*Ibid.*)

The minor contends that his detention was not the product of a reasonable suspicion by the two deputies. He bases this on the following: (1) nobody was present at the specific address provided by the tipster; (2) the tipster's information was not corroborated; (3) the group of persons found at the neighboring address were minors,

4

while the tip described adult drinkers; and (4) Pearson testified that the minor was not drunk or otherwise impaired, and the minor did not run off or engage in any furtive movements. We conclude reasonable suspicion existed.

First, the minor relies on *Bailey v. Superior Court* (1992) 11 Cal.App.4th 1107, 1112, for the proposition that the anonymous tip provided insufficient reasonable cause because it was uncorroborated. *Bailey* concerned the quantum of facts required in order to establish probable cause for a search warrant, and is therefore inapplicable to whether the deputies met the lower threshold of reasonable cause required to justify a temporary detention. Second, while it is true that the totality of the circumstances greeting police officers upon their response to an anonymous tip must be examined in order to show reasonable cause (*People v. Jordan* (2004) 121 Cal.App.4th 544, 556-558), the facts here support the trial court's order.

The phone tip was corroborated when the deputies found partly consumed Bud Light cans that were cold to the touch at the reported location. It was reasonable to look next door to see whether the persons who left those beer cans behind might be nearby. That decision was confirmed and further inquiry justified when the deputies spotted more Bud Light cans on the ground near the minor and several other people. Although the tip described adult gang members, the building was in gang territory and the fact that the minor's group was mostly young people meant no more than an error by the tipster as to the age of the loitering gang members.

The fact that minors were near the beer cans certainly gave rise to a reasonable suspicion that they were violating the drinking age laws. Nudging the minor, who appeared to be either drunk or asleep atop the hood of a car, was also reasonable under these circumstances so the deputies could make sure he was alright and so they could also question him about the group's activities. This startled the minor, who said "oh, fuck," and then began to walk away. Although a person's flight from approaching police officers may have an innocent explanation, it can under the circumstances show a consciousness of guilt that justifies a temporary detention. (*People v. Souza* (1994) 9 Cal.4th 224, 234-235.) That the minor here walked instead of running does not

preclude viewing his conduct as consciousness of guilt, particularly when it was preceded by the statement "oh, fuck," which can be understood as an expression of dismay upon being caught in the act.

Viewed as a whole, the evidence shows that the deputies found themselves outnumbered and in a poor tactical position while investigating underage drinking. Confronted with the minor's evasive conduct, the deputies had a reasonable suspicion that the minor's detention was necessary in order to investigate their suspicion and ensure their safety. We therefore conclude that the totality of the circumstances justified the minor's temporary detention.

### 2. *The Pat-Down Search Was Proper*

When an officer properly detains someone, he may also conduct a weapons patdown search of that person if the officer reasonably suspects that the person is armed and dangerous to the officer or others. (*In re H.M.* (2008) 167 Cal.App.4th 136, 143.) If the officer feels an object that he reasonably believes is a weapon, the officer can remove that object from the detainee's clothing. (*Ibid.*) This limited frisk is justified only when the officer can point to specific and articulable facts and their attendant rational inferences that give rise to a reasonable suspicion the detainee is armed. (*Ibid.*) Absolute certainty is not required. Instead, the issue is whether, under all the circumstances, a reasonably prudent person would be warranted in believing his safety was at risk. (*Ibid.*)

The minor contends the circumstances and his conduct did not justify the pat-down search because the deputies found him at a different address than the tipster provided and because he was justified in walking away from the deputies.[2] We once

---

**2** The minor's opening appellate brief does not mention this issue at all, contending instead that the evidence should have been suppressed because the detention was unlawful. Respondent did address the issue, presumably prompting the minor to address it in his appellate reply brief. Although we may disregard the issue because it was not raised until the reply brief, we exercise our discretion to reach the issue on the merits. (*Stoll v. Shuff* (1994) 22 Cal.App.4th 22, 25, fn. 1.)

more disagree.  The deputies, having lawfully detained the minor and others, found themselves in gang territory late at night, outnumbered and in a poor tactical position. The minor had walked away from the deputies toward an unsecured area in a manner that suggested consciousness of guilt.  He broke free from Deputy Pearson's grasp and again tried to evade the officers.  He was also wearing baggy clothing.  Pearson testified that Krase searched the minor based on all the circumstances they confronted.  We agree with the trial court that these circumstances warranted the patdown search and that evidence of the loaded gun was properly admitted at the adjudication hearing.

## DISPOSITION

The order determining that the minor was a ward of the juvenile court is affirmed.


                                                                RUBIN, J.
WE CONCUR:


          BIGELOW, P. J.


          GRIMES, J.


7