Filed 5/28/25  Rickley v. Tesoro Refining & Marketing Co. CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| REBECCA RICKLEY, et al.,<br><br>        Plaintiffs and Appellants,<br><br>        v.<br><br>TESORO REFINING & MARKETING COMPANY LLC, et al.,<br><br>        Defendants and Respondents. | B332899<br><br>(Los Angeles County Super. Ct. No. BC696774) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Richard L. Fruin, Jr., Judge.  Affirmed.

JDP PC, Jeff Dominic Price; Law Offices of Natasha Roit and Natasha Roit for Plaintiffs and Appellants.

Buchalter, Matthew S. Covington, C. Dana Hobart and Efrat M. Cogan for Defendants and Respondents.

_____

This is an appeal from a judgment entered after the trial court granted summary judgment against plaintiffs and appellants Rebecca Rickley and Natasha Roit and in favor of defendants and respondents Tesoro Refining & Marketing Company LLC (Tesoro) and Thrifty Oil Co. (Thrifty) on appellants' causes of action for invasion of privacy and violation of Civil Code section 1708.8.

The appeal arises out of litigation between the parties regarding whether respondents are entitled to a sewage easement on appellants' property. Appellants claim that on a date scheduled for respondents' legal counsel and consultants to conduct a court-ordered inspection of appellants' property, one of respondents' retained attorneys attempted to photograph Roit while she was in a bathroom in appellants' residence.[1] Appellants claim respondents are liable for invasion of privacy on the theory (1) the attorney acted as respondents' agent, or (2) respondents ratified their attorney's alleged malfeasance. The trial court ruled that both theories fail as a matter of law.

We reject appellants' agency theory because they concede the attorney's purported attempt to photograph Roit constitutes nonlegal conduct outside the scope of his role as litigation counsel. Appellants also failed to establish a triable issue as to whether (1) the attorney was respondents' employee or (2) respondents retained the attorney for any purpose other than to serve as outside litigation counsel. Appellants' ratification theory likewise fails. Even assuming arguendo respondents did not question the attorney regarding appellants' allegations and

_____

[1] Rickley, Roit, Tesoro, and Thrifty are the only parties to this appeal.

2

respondents did not terminate their relationship with him after they learned of the alleged incident, no rational factfinder could conclude the attorney purported to act on respondents' behalf when he allegedly attempted to photograph Roit. We thus affirm.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

We summarize only those facts pertinent to our disposition of this appeal.

Thrifty owned land in Malibu on which a gas station was situated. Thrifty leased the property to Tesoro. Appellants owned residential property on a hill above the gas station. In October 2016, appellants discovered a sewer leak on their property, which they traced to a sewer pipe from the gas station that ran across appellants' property.

Respondents later sued appellants to quiet title to an easement for the sewer line on appellants' property. Tesoro retained the Buchalter law firm to act as litigation counsel for respondents in the easement litigation. George Stephan was part of the Buchalter litigation team. In 2018, the trial court in the easement litigation issued an inspection order permitting respondents' counsel and consultants to enter appellants'

---

[2] We derive our Factual and Procedural Background in part from undisputed aspects of the trial court's ruling and the parties' admissions in their appellate briefing. (*Association for Los Angeles Deputy Sheriffs v. County of Los Angeles* (2023) 94 Cal.App.5th 764, 776–777 (*Association for Los Angeles Deputy Sheriffs*) [utilizing this approach].) We also rely in part on assertions respondents make in their brief that appellants do not dispute in their reply. (See *id.* at pp. 773–774 [concluding that appellants tacitly conceded a point raised by respondents by failing to dispute it in the reply brief].)

property to locate and survey the sewer line. As the trial court in the instant action noted, the inspection order provided, " '[T]he interior of the home may not be intentionally photographed' and . . . any photographs are 'for the purposes of this litigation only.' "

Appellants assert, "[A]t approximately 8:20 a.m. [on March 1, 2018], more than an hour before the official start of the inspection," "Stephan, who was not part of the survey crew, bolted onto [appellants'] property."[3] Appellants maintain that "Rickley walked in front of . . . Stephan, who was not authorized to be on the property, and told him to leave the property." According to appellants, "Stephan refused, kept walking and, when . . . Roit was visible in the bathroom, pointed a camera towards the window towards . . . Roit." According to appellants, after "Rickley approached Stephan and interrupted his activities," "Stephan said[,] 'I did not film inside your house[,]' and . . . Rickley responded, . . . 'No because I stopped you.' "

On March 5, 2018, appellants filed a complaint against respondents for (1) abuse of process; (2) invasion of privacy, in violation of article I, section 1 of our state's Constitution; (3) violating Civil Code section 1708.8; and (4) negligence.[4] As we explained in our prior opinion regarding respondents' anti-SLAPP[5] motion in this case, "in [the] first and fourth causes of

_____

[3] Although appellants allege the scheduled start time for the inspection was 10:00 a.m., they claim "the survey crew . . . [was] going to start at 8:00 a.m."

[4] Although appellants mention Stephan in the complaint, they do not name him or Buchalter as defendants.

[5] (Strategic Lawsuit Against Protected Activity; Code Civ. Proc., § 425.16.)

4

action[ ] for abuse of process and negligence, [appellants] alleged that [respondents] deliberately leveraged the court's inspection order to strong-arm [their] way onto [appellants'] property and damage it . . . ." (See *Rickley v. Tesoro Refining & Marketing Co., LLC* (Oct. 16, 2020, B291375) [nonpub. opn.] [2020 WL 6110822, at p. *1] (*Rickley*) [noting the opinion refers to appellants collectively as "Rickley" and respondents collectively as "Tesoro"].)**6** "In [the] second and third causes of action[ ] for invasion of privacy and violation of Civil Code section 1708.8," appellants alleged that Stephan invaded appellants' privacy by " 'peering into [appellants'] bedrooms and photographing and/or attempting to photograph and/or film . . . Roit in the bathroom' " adjoining the guest bedroom. (See *Rickley*, at pp. *1, *4.) Appellants averred "on information and belief" that Stephan engaged in this behavior "with full prior knowledge of, authorization from, and ratification by [respondents] . . . ."

Respondents specially moved to strike the complaint under the anti-SLAPP statute, arguing the conduct alleged in the complaint was activity protected by the statute because it

---

**6** In a footnote to their opening brief, appellants "request that the Court take judicial notice of the files and the opinion in the appeal of the denial of [respondents'] anti-SLAPP motion in this case, Case No. B291375." Appellants' request for judicial notice is procedurally improper. (See Cal. Rules of Court, rule 8.252(a) [providing that, "[t]o obtain judicial notice by a reviewing court under Evidence Code section 459, a party must serve and file a separate motion with a proposed order," and prescribing the requirements for that type of motion].) Nevertheless, we, sua sponte, take judicial notice of our prior unpublished opinion from case No. B291375. (Evid. Code, §§ 452, subd. (d), 459.)

5

"occurred as part of a court-ordered property inspection . . . ." (See *Rickley*, *supra*, B291375 [2020 WL 6110822, at p. *1].) The trial court granted the motion to strike the causes of action for abuse of process and negligence because they arose from implementation of the inspection order and appellants failed to establish a probability of prevailing on the merits of those two causes of action. (See *id.* at p. *2.) The court denied the motion, however, as to the causes of action for invasion of privacy and violation of Civil Code section 1708.8 on the ground those claims did not arise from activity protected by the anti-SLAPP statute. (See *Rickley*, at pp. *2–3.)

In an unpublished decision, we affirmed the trial court's partial denial of respondents' anti-SLAPP motion because "[respondents'] alleged attempt to photograph Roit in her bathroom was extraneous to the court-ordered property inspection, and was thus unprotected by the anti-SLAPP statute." (*Rickley*, *supra*, B291375 [2020 WL 6110822, at pp. *1, *4].) Appellants did not contest the trial court's order striking their abuse of process and negligence causes of action. (*Id.* at p. *2.)

Respondents ultimately moved for summary judgment, arguing that appellants' remaining claims for invasion of privacy and violation of Civil Code section 1708.8 fail because appellants had no evidence showing (1) Stephan committed the alleged misconduct in the course and scope of his agency relationship with respondents, or (2) respondents ratified Stephan's supposed wrongful conduct. The trial court found both arguments persuasive and granted respondents' motion. The court noted, "[T]he issue of whether Stephan took or attempted to take photographs or to peer into the interior of [appellants'] house is

6

immaterial to this motion." The court also ruled on each side's evidentiary objections.

On July 20, 2023, the trial court entered judgment in respondents' favor and against appellants in accordance with the court's summary judgment ruling. Appellants timely appealed from the judgment on September 7, 2023.

## STANDARDS OF REVIEW

" 'Summary judgment is appropriate only "where no triable issue of material fact exists and the moving party is entitled to judgment as a matter of law.' " [Citation.]" (*Barenborg v. Sigma Alpha Epsilon Fraternity* (2019) 33 Cal.App.5th 70, 76 (*Barenborg*).) "As the moving parties, defendants . . . [bear] two burdens. The first burden is that 'from commencement to conclusion, the party moving for summary judgment bears the burden of persuasion that there is no triable issue of material fact and that he [or she] is entitled to judgment as a matter of law.' [Citations.] The second burden is . . . 'an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact.' [Citation.] . . . 'Once the defendant meets the foregoing [initial] burden [of production], "the burden shifts to the plaintiff . . . to show that a triable issue of one or more material facts exists as to that cause of action . . . ." [Citation.]' [Citation.]" (See *Stokes v. Forty Niners Stadium Management Co., LLC* (2024) 107 Cal.App.5th 1199, 1213–1214.)

"Under summary judgment law, ' "[t]here is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." [Citation.] . . . ' " [Citation.]" (*Lares v.*

7

*Los Angeles County Metropolitan Transportation Authority* (2020) 56 Cal.App.5th 318, 331–332.) A court must "view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor." (See *Barenborg*, *supra*, 33 Cal.App.5th at p. 76.) In opposing a motion for summary judgment, a plaintiff "shall not rely upon the allegations or denials of its pleadings to show that a triable issue of material fact exists but, instead, shall set forth the specific facts showing that a triable issue of material fact exists as to the cause of action or a defense thereto." (See Code Civ. Proc., § 437c, subd. (p)(2).)

" 'We review the ruling on a motion for summary judgment de novo, applying the same standard as the trial court.' [Citation.]" (*Barenborg*, *supra*, 33 Cal.App.5th at p. 76.) " '[A] different analysis is required for our review of the trial court's . . . rulings on evidentiary objections. Although it is often said that an appellate court reviews a summary judgment motion "de novo," the weight of authority holds that an appellate court reviews a court's final rulings on evidentiary objections by applying an abuse of discretion standard. [Citations.]' [Citation.]" (*Michaels v. Greenberg Traurig, LLP* (2021) 62 Cal.App.5th 512, 521.)

" 'Even when our review on appeal "is de novo, it is limited to issues which have been adequately raised and supported in [the appellant's opening] brief. [Citations.] Issues not raised in an appellant's brief are deemed waived or abandoned." ' [Citation.] To succeed[,] . . . [an appellant] must first establish error. . . . ' "[T]he most fundamental rule of appellate review is that an appealed judgment or order is presumed to be correct." [Citation.] It is the appellant who bears the burden of overcoming that presumption.' [Citation.]" (See *Golden Door*

*Properties, LLC v. County of San Diego* (2020) 50 Cal.App.5th 467, 554–555, first alteration in original.) Consequently, " ' "[d]e novo review does not[, for instance,] obligate us to cull the record for the benefit of the appellant in order to attempt to uncover the requisite triable issues. . . ." ' [Citation.]" (See *Los Angeles Unified School Dist. v. Torres Construction Corp.* (2020) 57 Cal.App.5th 480, 492.)

To "rebut[ ] the presumption of correctness accorded to the trial court's decision," the appellant must " ' " 'supply[ ] the reviewing court with some cogent argument supported by legal analysis and citation to the record.' " [Citation.]' [Citations.]" (See *Association for Los Angeles Deputy Sheriffs*, *supra*, 94 Cal.App.5th at pp. 776–777.)

Also, " '[i]f the *decision* of a lower court is correct on any theory of law applicable to the case, the judgment or order will be affirmed regardless of the correctness of the grounds upon which the lower court reached its conclusion.' [Citation.]" (*Estate of Sapp* (2019) 36 Cal.App.5th 86, 104.)

## DISCUSSION

On appeal, appellants do not contend respondents failed to meet their initial burden of making a prima facie showing negating the existence of triable issues vis-à-vis appellants' agency and ratification theories. Absent from appellants' briefing is any argument that the burden did not shift to them to make a showing that triable issues do in fact exist. Rather, appellants merely contend the trial court erred in finding there exists no triable issue of material fact as to their two theories of liability. Specifically, appellants contend, "The evidence, viewed in the light most favorable to [appellants], was that Stephan was an agent of [respondents] at the time" he allegedly attempted to

9

photograph Roit in the bathroom of her home.  Similarly, appellants argue, "The trial court . . . failed to view the evidence in the light most favorable to [appellants] when it dismissed [their] ratification [theory]."

As we explain below, appellants fail to show the trial court erred in finding no triable issues of material fact as to appellants' agency and ratification theories.  For that reason, we do not address (1) appellants' claim there was a triable issue of material fact regarding whether Stephan's alleged misconduct violated Civil Code section 1708.8 and our state's constitutional privacy provision, and (2) respondents' argument that "[s]ummary judgment was proper against Rickley as there was no evidence that anyone took or attempted to take a visual image of Rickley . . . engaged in private, personal or familial activity."

## A.    Appellants Fail To Demonstrate the Trial Court Erred In Ruling That Stephan's Alleged Misconduct Fell Outside the Scope of His Agency Relationship with Respondents

" 'An agent is one who represents another, called the principal, in dealings with third persons.  Such representation is called agency.' [Citation.]  The essence of an agency relationship is the delegation of authority from the principal to the agent which permits the agent to act 'not only *for*, but *in the place of*, his principal' in dealings with third parties." (*Channel Lumber Co. v. Porter Simon* (2000) 78 Cal.App.4th 1222, 1227 (*Channel Lumber Co.*).)  " '[A]s a general proposition the attorney-client relationship, insofar as it concerns the authority of the attorney to bind his client by agreement or stipulation, is governed by the principles of agency. . . .  Hence, "the client as principal is bound by the acts of the attorney-agent within the scope of his actual

10

authority (express or implied) or his apparent or ostensible authority; or by unauthorized acts ratified by the client." . . . .' [Citation.]" (*Id.* at p. 1230.)

"While much of what an attorney does in litigation is contractually binding on the client [citation], where it is tortious the client is not vicariously liable merely for retaining the attorney who is an independent contractor. [Citations.] The client is insulated from tort liability for the attorney's litigation conduct on his behalf where '[t]here is no showing . . . of ratification or any other act by [the client] endorsing or approving the attorney's actions.' [Citation.]" (*Palmer v. Ted Stevens Honda, Inc.* (1987) 193 Cal.App.3d 530, 539.)

Applying the legal principle that "a client is not vicariously liable for torts committed by a lawyer representing the client in litigation," the trial court found that respondents are not vicariously liable for Stephan's alleged misconduct.[7] Appellants

---

[7] Although appellants' two remaining privacy causes of action arise under our state Constitution (i.e., art. I, § 1) and a statute (i.e., Civ. Code, § 1708.8) (Factual & Procedural Background, *ante*), appellants do not argue the agency principles invoked by the trial court and summarized above are inapplicable. Put differently, they do not argue that respondents are vicariously liable for Stephan's conduct regardless of the scope of his agency relationship. In fact, appellants acknowledge that respondents' liability turns on "whether[,] in photographing or attempting to photograph the interior of [appellants'] home[,] Stephan was an agent of [respondents]." Accordingly, appellants waive any argument that the agency principles delineated above are inapplicable to this case. (See *Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956 (*Cahill*) [" ' "When an appellant fails to raise a point, or asserts it but fails to support

11

argue the court erred because "[t]he evidence, viewed in the light most favorable to [appellants]," establishes Stephan engaged in "nonlegal conduct . . . not protected under the independent contractor rubric." According to appellants, Stephan engaged in "conduct not within the scope of either the court ordered inspection or the employment of trial counsel" when he " 'bolted onto [appellants'] property' . . . more than an hour before the official start of the inspection" on March 1, 2018, "refus[ed] to stop trespassing" after "Rickley told him to leave the property," and "pointed a camera towards the window towards . . . Roit" "while . . . [she] was visible in the bathroom . . . ."

We acknowledge " '[a]n attorney may act as an employee for his employer in carrying out nonlegal functions' " (*Channel Lumber Co.*, *supra*, 78 Cal.App.4th at p. 1230), and that, " '[u]nder the doctrine of respondeat superior, an employer is vicariously liable for his employee's torts committed within the scope of the employment' [citation]" (*Jackson v. AEG Live, LLC* (2015) 233 Cal.App.4th 1156, 1178). Insofar as appellants claim Stephan was respondents' employee, they fail to support that assertion with evidence or legal analysis.

Specifically, accompanying appellants' claim in their opening brief that "George Stephan was employed by [respondents] as an attorney in the Easement Litigation" is a citation to an excerpt from respondents' separate statement that merely provides: "George Stephan, a senior trial lawyer at

---

it with reasoned argument and citations to authority, we treat the point as waived." ' [Citation.] 'We are not bound to develop appellants' arguments for them.' "]; Standards of Review, *ante* [noting that the appellant bears the burden of rebutting the presumption of correctness accorded to the trial court's decision].)

12

Buchalter, has been and is part of the litigation team representing Tesoro and Thrifty in the Easement Litigation." Similarly, appellants support their assertion that "[respondents] did not discharge Stephan from employment" with another excerpt from respondents' separate statement that provides: "During their investigation and continuing thereafter Tesoro (without any objection by Thrifty) continued to *retain* and *work with* Buchalter." (Italics added.) This undisputed fact that respondents continued their relationship with Buchalter does not establish the nature of that relationship, let alone demonstrate that Stephan was respondents' employee.

Appellants also claim respondents "continued to employ Stephan in this case" after learning of appellants' allegations against him. Appellants support this assertion with a citation to their own separate statement in which appellants claimed the following are undisputed material facts: "[Respondents] kept . . . Stephan in their employ without a moment's pause or hesitation after the events of March 1, 2018 came to light and after they were fully apprized [*sic*] by emails of what occurred on March 1, 2018. [Respondents] continue to employ . . . Stephan as their counsel in the Easement Litigation, in the instant matter, and in other cases." Accompanying these alleged undisputed facts in appellants' separate statement are citations to certain deposition transcript excerpts and an exhibit. Absent from appellants' briefing and this excerpt from their separate statement is any analysis or citation to authority showing that the evidence referenced in their separate statement establishes a triable issue as to whether Stephan was respondents' employee. Appellants thus waive that argument. (See *Cahill, supra*, 194 Cal.App.4th at p. 956; cf. *Limon v. Circle K Stores Inc.* (2022) 84

13

Cal.App.5th 671, 687 [" 'An appellant cannot rely on incorporation of trial court papers, but must tender arguments *in the appellate briefs*.' "].)

Further, appellants fail to counter respondents' assertion in their appellate briefing that "[t]here was no evidence that Buchalter, or George Stephan in particular, was hired for any purpose other than to serve as outside litigation counsel . . . ." Respondents also assert, and appellants do not contest in their reply, that respondents "did not authorize, direct, or induce Stephan to perform the wrongful conduct alleged in the complaint." Appellants thus tacitly agree with respondents on these points. (See *Association for Los Angeles Deputy Sheriffs*, *supra*, 94 Cal.App.5th at pp. 774–775 [holding that an appellant may concede a point raised in a respondent's brief by failing to dispute it in the appellant's reply].)

In short, given appellants' assertion that Stephan engaged in " 'nonlegal' conduct not within the scope of . . . the employment of trial counsel" and their failure to establish triable issues regarding whether (1) Stephan was respondents' employee, and (2) respondents had hired Stephan for any purpose other than to serve as outside litigation counsel, no rational factfinder could conclude that the alleged misconduct of which appellants complain fell within the scope of Stephan's agency relationship with respondents. Appellants' theory of vicarious liability thus fails as a matter of law.

Lastly, for the reasons set forth below, we reject appellants' suggestion that *Lynn v. Superior Court* (1986) 180 Cal.App.3d 346 (*Lynn*) and *Oie v. N. Star Capital Acquisitions, LLC* (C.D. Cal. 2006) 486 F.Supp.2d 1089 (*Oie*) demonstrate that

14

respondents may be held vicariously liable for Stephan's alleged malfeasance.

In *Lynn*, a plaintiff sued her former landlords for wrongful eviction. (See *Lynn, supra*, 180 Cal.App.3d at pp. 347–348.) The plaintiff alleged she was evicted from her apartment even though she was never personally served in the underlying unlawful detainer action and she was not named in the order to vacate the premises, the writ of possession, or the instructions to the marshal who executed the writ. (See *id.* at p. 348.) The plaintiff asserted intentional and negligent infliction of emotional distress claims against the former landlords on the theory they were vicariously liable for the alleged tortious conduct of the attorney the former landlords had retained in the unlawful detainer action. (See *ibid.*) The trial court granted summary adjudication in favor of the plaintiff, holding that the former landlords "may be held vicariously liable for the alleged tortious conduct of their attorney . . . ." (See *ibid.*)

In ruling on the former landlords' petition for writ of mandate seeking review of the summary adjudication order, the *Lynn* court acknowledged that " '[a]n attorney may act as an employee for his employer in carrying out nonlegal functions [citation]; he may be the agent of his employer for business transactions [citation], or for imputed knowledge [citation.]" (See *Lynn, supra*, 180 Cal.App.3d at pp. 347–349.) *Lynn*, however, also recognized, "[I]n [an attorney's] role as trial counsel, he is an independent contractor[,]' " and there exists a "general rule of immunity from imputed liability for the acts of an independent contractor . . . ." (See *id.* at p. 349.) In accordance with those legal principles, the Court of Appeal found the plaintiff impermissibly sought "damages for the tortious acts of the

15

attorney who represented" the former landlords, and issued a peremptory writ of mandate directing the trial court to vacate its summary adjudication order.  (See *id.* at pp. 348, 350.)

In *Oei*, two plaintiffs asserted causes of action against a debt collector for violations of the federal Fair Debt Collection Practices Act (FDCPA) and state Robbins-Rosenthal Fair Debt Collections Practices Act (the Rosenthal Act), as well as for intentional infliction of emotional distress.  (See *Oei*, *supra*, 486 F.Supp.2d at pp. 1091–1092, 1098.)  The plaintiffs averred the debt collector instructed its law firm to file an action against them to recover a debt for a credit card that the plaintiffs never used, and that the debt collector and the law firm thereafter "called the [plaintiffs] incessantly on the telephone, verbally harassing them and falsely accusing them of owing [the debt collector the] outstanding debt."  (See *id.* at pp. 1092, 1100.)  The plaintiffs further alleged the law firm obtained a default judgment against them and served garnishment papers on one of the plaintiff's employers, resulting in that plaintiff's wages being garnished on two occasions.  (See *id.* at p. 1093.)

The debt collector moved to dismiss the complaint under Federal Rules of Civil Procedure, rule 12(b)(6) for failure to state a claim.  (*Oei*, *supra*, 486 F.Supp.2d at pp. 1091–1092.)  As relevant here, the federal district court found *Lynn* did not preclude the plaintiffs from suing the debt collector under the FDCPA for the law firm's alleged violations of that statute.  (See *Oei*, at pp. 1094–1096 & fn. 28.)  The *Oei* court explained, "[E]ven if *Lynn* had held, as a matter of California law, that a client may not be held vicariously liable for his or her attorney's actions, this holding would be inapposite, as the scope of vicarious liability under the FDCPA is a question of federal rather than state law."

16

(*Oei*, at p. 1096, fn. 28.)  As to the plaintiffs' state-law Rosenthal Act claim, the district court found that because "[t]he *Lynn* court held only that a client is not liable for torts committed by his attorney *in his role as trial attorney*," "the decision *at most* insulates [the debt collector] from vicarious liability for [the law firm's] filing and prosecution of the state court collection action." (See *Oei*, at p. 1096, fn. 28.)  Specifically, the court found the *Lynn* decision "does not protect [the debt collector] from liability for such 'nonlegal' conduct as [the law firm's] making repeated harassing telephone calls."  (See *Oei*, at p. 1096, fn. 28.)  Upon rejecting the debt collector's other challenges to the FDCPA and Rosenthal Act claims, the court denied the motion to dismiss those causes of action but dismissed the intentional infliction of emotional distress claim because it arose out of conduct protected by the litigation privilege.  (See *Oei*, at pp. 1097–1098, 1101, 1103–1104.)

Neither *Lynn* nor *Oei* undermines our analysis.  As we explained above, appellants fail to show that a reasonable jury could find that respondents retained Buchalter or Stephan for any purpose other than serving as outside litigation counsel. Because only litigation functions fell within the scope of Stephan's agency relationship with respondents, the result in this case is the same as that in *Lynn*, to wit, the clients are not vicariously liable for the attorney's alleged wrongdoing. (See *Lynn*, *supra*, 180 Cal.App.3d at pp. 348, 350.)  This critical fact that only litigation functions fell within the scope of Stephan's agency distinguishes the instant case from *Oei*, where the plaintiff pleaded allegations (accepted as true and liberally construed) suggesting that the debt collector hired the law firm, inter alia, to engage in nonlegal work—i.e., making harassing

17

telephone calls to the plaintiffs to obtain payment on a debt. (See *Oei*, *supra*, 486 F.Supp.2d at pp. 1092–1093, 1096 & fn. 28.) Another key distinction is that the plaintiffs in *Oei* asserted a federal cause of action for which "the scope of vicarious liability . . . is a question of federal rather than state law" (i.e., the FDCPA) (see *Oei*, at pp. 1091, 1096 & fn. 28), whereas appellants assert here only state-law causes of action governed by the agency principles set forth in this section (see fn. 7, *ante* [identifying the two remaining state-law causes of action, and noting that appellants do not dispute that the agency principles discussed herein apply to their claims].)

In sum, appellants fail to show the trial court erred in concluding, as a matter of law, that Stephan's purported attempt to photograph Roit fell beyond the scope of his agency relationship with respondents.

## B. Appellants Do Not Show the Trial Court Erred In Rejecting Their Ratification Theory

" 'Ratification is the voluntary election by a person to adopt in some manner as his own an act which was purportedly done on his behalf by another person, the effect of which, as to some or all persons, is to treat the act as if originally authorized by him. [Citations.] [¶] A purported agent's act may be adopted expressly or it may be adopted by implication based on conduct of the purported principal from which an intention to consent to or adopt the act may be fairly inferred, including conduct which is "inconsistent with any reasonable intention on his part, other than that he intended approving and adopting it." ' [Citation.]" (*Dickinson v. Cosby* (2019) 37 Cal.App.5th 1138, 1158 (*Dickinson*).) "A principal may implicitly 'ratify' the conduct of an agent—and thereby become liable for that conduct under the

18

law—by accepting the benefits of that conduct with 'knowledge of the material facts.' [Citations.]" (*Fischl v. Pacific Life Ins. Co.* (2023) 94 Cal.App.5th 108, 129.)

Appellants maintain the trial court erred "in finding no evidence of ratification of Stephan's conduct." They assert, " '[T]he failure to discharge an employee after knowledge of his or her wrongful acts may be evidence supporting ratification.' " Appellants further contend, "It is undisputed that [respondents] did not discharge Stephan from employment[;] . . . [t]hough [respondents] claimed that [they] conducted an investigation into the allegations against Stephan, [they] never asked Stephan about the allegations[;] . . . [they] ignored other lawsuits Stephan was involved in, including suing his own law firm and being sued by clients[;] . . . and [they] continued to employ Stephan in this case."

As a preliminary matter, appellants fail to support their assertion that respondents "ignored other lawsuits Stephan was involved in . . . ." Appellants direct us to an excerpt from their separate statement in which they cited appellants' exhibit 17 for the proposition that respondents ignored "other lawsuits in which . . . Stephan was involved, including suing his own prior law firm, being sued by clients, and being involved in some $2.5 million bitcoin scheme lawsuit." In ruling on respondents' summary judgment motion, however, the trial court sustained respondents' relevance objection to appellants' exhibit 17. On appeal, appellants do not contest the trial court's ruling

sustaining this objection.[8]  Accordingly, we reject as lacking in evidentiary support appellants' argument that respondents ratified Stephan's alleged misconduct by ignoring other lawsuits in which he was involved.  (See *Alameda Health System v. Alameda County Employees' Retirement Assn.* (2024) 100 Cal.App.5th 1159, 1174 ["On review of an order granting summary judgment, ' "[w]e review the trial court's decision de novo, considering all the evidence set forth in the moving and opposing papers except that to which objections were made and sustained." ' "]; Standards of Review, *ante* [noting that the trial court's rulings are presumed correct].)

Next, we acknowledge that "[a] principal's failure to discharge an agent after learning of his wrongful acts may be evidence of ratification." (*Dickinson*, *supra*, 37 Cal.App.5th at p. 1158.)  Nevertheless, assuming arguendo (1) respondents did not ask Stephan about appellants' allegations against him and (2) respondents did not terminate their agency relationship with Stephan upon learning of those allegations, appellants fail to show there exists a triable issue of material fact as to their ratification theory.[9]

---

[8]  Although appellants in their reply brief disavow any reliance upon "evidence as to which objection has been made and sustained," they fail to acknowledge the trial court ruled that appellants' exhibit 17 is inadmissible.

[9]  Because we reject appellants' assertion that respondents' "perfunctory investigation" of Stephan's conduct and their failure to "discharge Stephan" give rise to "a material dispute of fact as to whether [respondents] ratified [his] conduct," we do not address respondents' argument that appellants are barred from supporting their ratification theory with actions or omissions occurring after the filing of the complaint.

As we explained in Discussion, part A, *ante*, appellants fail to show that respondents hired Buchalter or Stephan for any purpose other than serving as outside litigation counsel, and appellants concede in their opening and reply briefs that Stephan's alleged misconduct fell outside his role as respondents' counsel. Furthermore, appellants do not direct us to any evidence that respondents benefited in some way from Stephan's supposed attempt to photograph Roit in the bathroom. Indeed, we previously explained that "allegedly peering into [appellants'] bedroom and bathroom could not have served [respondents] in any way in the easement litigation, and would have been in fact expressly prohibited by the trial court's inspection order." (*Rickley*, *supra*, B291375 [2020 WL 6110822, at p. *4].) Because no rational factfinder could conclude that Stephan purported to act on respondents' behalf, appellants' ratification theory fails as a matter of law. (See *Emery v. Visa Internat. Service Assn.* (2002) 95 Cal.App.4th 952, 961 ["A principal cannot ratify the act of the alleged agent, unless the 'agent' purported to act on behalf of the principal."]; *Dickinson*, *supra*, 37 Cal.App.5th at p. 1158 [noting that ratification requires " 'a person to adopt in some manner as his own an act which was purportedly done on his behalf by another person' "].)

## DISPOSITION

We affirm the trial court's judgment.  Defendants and respondents Tesoro Refining & Marketing Company LLC and Thrifty Oil Co. are awarded their costs on appeal.

NOT TO BE PUBLISHED.


BENDIX, J.


We concur:



ROTHSCHILD, P. J.



M. KIM, J.